**RIGRODSKY LAW, P.A.**
Gina M. Serra
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: gms@rl-legal.com

*Counsel for Plaintiff Steven Heicklen*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN HEICKLEN, Derivatively on Behalf of Nominal Defendant HAYWARD HOLDINGS, INC., | : : : |
| Plaintiff, | : : Case No. _____ |
| v. | : : **VERIFIED SHAREHOLDER** : **DERIVATIVE COMPLAINT** : |
| KEVIN HOLLERAN, STEPHEN J. FELICE, CHRISTOPHER F. BERTRAND, KEVIN D. BROWN, DIANE S. DAYHOFF, LAWRENCE H. SILBER, ARTHUR L. SOUCY, LORI A. WALKER, EDWARD D. WARD, MARK MCFADDEN, GREGORY D. BRENNEMAN, TIMOTHY WALSH, ALI AFRAZ, and JASON PETERS, | : **JURY TRIAL DEMANDED** : : : : : : : : |
| Defendants, | : : |
| and | : : |
| HAYWARD HOLDINGS INC., | : : |
| Nominal Defendant. | : : : |

Plaintiff Steven Heicklen ("Plaintiff"), by and through his undersigned attorneys, brings

this derivative complaint for the benefit of nominal defendant Hayward Holdings Inc.

("Hayward" or the "Company"), against its Board of Directors (the "Board") and certain of its

executive officers for Defendants' (defined below) breaches of fiduciary duties, unjust enrichment, waste of corporate assets, and violations of Sections 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, conference call transcripts and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, press releases published by and regarding Hayward, legal filings, news reports, securities analysts' reports about the Company, and other publicly available information.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought on behalf of Hayward against certain officers and members of the Company's Board (collectively, the "Individual Defendants") (defined further, *infra*) for, among other things, breaching their fiduciary duties to Company stockholders by intentionally or recklessly making or permitting the dissemination of materially false and misleading statements and omissions from October 27, 2021 through July 28, 2022, inclusive (the "Relevant Period").

2.     Hayward operates globally, designing, manufacturing, and marketing pool equipment and related automation systems.

3.     Hayward generates most of its revenue from specialty distributors, who in turn sell to pool builders, retailers, and servicers. The Company recognizes revenue at the moment it ships products to its customers, who are predominantly distributors, rather than at the time they are sold to actual consumers.

4. Throughout the Relevant Period, Company management issued materially false and misleading statements and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that the Company was engaging in a channel-stuffing scheme to artificially inflate sales and revenue figures. In other words, the Company inundated its distributors with excess inventory to inflate short-term sales at the expense of future revenues. While the Company was engaged in the channel-stuffing scheme, Hayward management misleadingly touted the Company's revenue growth and assured the public that the inventory levels of its distributors accurately reflected high consumer demand.

5. When the truth about the Company's scheme and the state of its business emerged, the price of Hayward's stock sharply declined, falling 18.23% in one day.

6. As a result of the foregoing, two securities fraud class actions have commenced against the Company and certain of its executives and members of its Board, captioned *City of Southfield Fire and Police Ret. Sys.v. Hayward Holdings, Inc. et al,* Docket No. 2:23-cv-04146 (D.N.J. Aug 02, 2023) and *Erie Cnty. Emp. Ret. Sys. v. Hayward Holdings. Inc. et al,* Docket No. 2:23-cv-20764 (D.N.J. Sep 28, 2023) (the "Securities Actions").

7. In light of the Individual Defendant's misconduct—which has caused the Company to incur significant costs to defend itself in the Securities Actions, exposed the Company to substantial class-wide liability, caused the Company to incur significant costs associated with internal investigations, caused the Company costs to remediate deficient internal controls over its financial reporting, incur losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were improperly overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein—the Company will have to expend millions of dollars.

3

8.      Moreover, because of the breaches of fiduciary duty by the Individual Defendants, many of whom are the Company's current directors, their collective fraud, the substantial likelihood of the directors' liability in this derivative action and Defendants' liability in the Securities Actions, and the longstanding business and personal relationships among the Individual Defendants, a majority of Hayward's Board cannot consider a demand to commence litigation against themselves and the other Individual Defendants on behalf of the Company in the valid exercise independent business judgment. Accordingly, Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of sections 10(b) of the Exchange Act and Rule 10b-5 (17 C.F.R.§240.10b-5) promulgated thereunder by the SEC.

10.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

11.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

12.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Nominal Defendant Hayward is headquartered in this District and conducts substantial business in this District. Further, much of the conduct alleged herein occurred in substantial part in this District.

4

## PARTIES

*Plaintiff*

14.    Plaintiff currently holds shares of Hayward common stock and has been a continuous holder at all relevant times.

*Nominal Defendant*

15.    Nominal Defendant Hayward is incorporated under the laws of Delaware with its principal executive offices located at 400 Connell Drive, Suite 6100, Berkeley Heights, New Jersey. Hayward's common stock trades on the NYSE under the ticker symbol "HAYW."

*Individual Defendants*

16.    Defendant Kevin Holleran ("Holleran") has served as President, Chief Executive Officer ("CEO"), and as a member of the Board since August 2019. According to the Company's public filings, Defendant Holleran received $5,620,709 in 2022 in compensation from the Company.

17.    Defendant Stephen J. Felice ("Felice") serves as Chairman of the Board and has served as a member of the Board since May 2018. Defendant Felice serves as Chair of the Nominating and Corporate Governance Committee and as a member of the Compensation Committee. According to the Company's public filings, Defendant Felice received $310,000 in 2022 in compensation from the Company.

18.    Defendant Christopher F. Bertrand ("Bertrand") has served as a member of the Board since October 2020.

19.    Defendant Kevin D. Brown ("Brown") has served as a member of the Board since June 2017 and serves as a member of the Compensation Committee.

20.    Defendant Diane S. Dayhoff ("Dayhoff") has served as a member of the Board

since March 2021 and serves as a member of the Audit Committee. According to the Company's public filings, Defendant Dayhoff received $227,500 in 2022 in compensation from the Company.

21.     Defendant Lawrence H. Silber ("Silber") has served as a member of the Board since November 2019 and serves as Chair of the Compensation Committee. According to the Company's public filings, Defendant Silber received $227,500 in 2022 in compensation from the Company.

22.     Defendant Arthur L. Soucy ("Soucy") has served as a member of the Board since June 2017 and serves as a member of the Audit Committee and the Nominating and Corporate Governance Committee. According to the Company's public filings, Defendant Soucy received $205,000 in 2022 in compensation from the Company.

23.     Defendant Lori A. Walker ("Walker") has served as a member of the Board since March 2021 and serves as Chair of the Audit Committee. According to the Company's public filings, Defendant Walker received $242,500 in 2022 in compensation from the Company.

24.     Defendant Edward D. Ward ("Ward") has served as a member of the Board since April 2022 and serves as a member of the Nominating and Corporate Governance Committee. According to the Company's public filings, Defendant Ward received $174,333 in 2022 in compensation from the Company.

25.     Defendant Mark McFadden ("McFadden") served as a member of the Board between June 2017 and September 2023.

26.     Defendant Gregory D. Brenneman ("Brenneman") served as a member of the Board between June 2017 and June 2023.

27.     Defendant Timothy Walsh ("Walsh") served as a member of the Board between June 2017 and May 2023.

6

28.     Defendant Ali Afraz ("Afraz") served as a member of the Board between February 2018 and May 2022.

29.     Defendant Jason Peters ("Peters") served as a member of the Board between June 2017 and May 2022.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

30.     By reason of their positions as officers and/or directors of Hayward, and because of their ability to control the business and corporate affairs of Hayward, the Individual Defendants owed Hayward and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Hayward in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Hayward and its shareholders so as to benefit all shareholders equally.

31.     Each director and officer of the Company owes to Hayward and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

32.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Hayward, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

33.     To discharge their duties, the officers and directors of Hayward were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

34.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good

faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Hayward, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

35.     As senior executive officer and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

36.     To discharge their duties, the officers and directors of Hayward were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Hayward were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and

pursuant to Hayward's own Code of Ethics;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how Hayward conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of Hayward and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Hayward's operations would comply with all applicable laws and Hayward's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate

disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

37.     Each of the Individual Defendants further owed to Hayward and the shareholders the duty of loyalty requiring that each favor Hayward's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

38.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Hayward and were at all times acting within the course and scope of such agency.

39.     Because of their advisory, executive, managerial, and directorial positions with Hayward, each of the Individual Defendants had access to adverse, non-public information about the Company.

40.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Hayward.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

41.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

42.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

43.     The Individual Defendants accomplished their conspiracy, common enterprise,

and/or common course of conduct by causing the Company purposefully, recklessly, or negligently to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

44.     In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors or officers of Hayward, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

45.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

46.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Hayward and at all times acted within the course and scope of such agency.

## **HAYWARD'S CODES OF ETHICS**

47.     Hayward's Code of Ethics states that its purpose is to promote:

(i) the honest and ethical conduct of Senior Executive and Financial Officers (as defined below), including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships; (ii) full, fair, accurate, timely and understandable disclosure in periodic reports and documents required to be filed by Hayward Holdings, Inc. (the "Company") with the Securities and Exchange Commission (the "SEC") and in other public communications made by the Company; and (iii) compliance with all applicable laws, rules and regulations that apply to the Company and its Senior Executive and Financial Officers.

48.     The Code of Ethics applies to the following senior executive and financial officers:

"Chief Executive Officer (Principal Executive Officer), Chief Financial Officer (Principal Financial Officer and Principal Accounting Officer), [Executive Vice President and Chief Commercial Officer] and the Treasurer and Corporate Controller (and any persons performing similar functions)."

49.     Compliance with the Code of Ethics "is a condition to employment for each Senior Executive and Financial Officer and any violations of this Code may result in disciplinary action, up to and including termination of employment."

50.      In a subsection titled "Accuracy of Company Records and Reporting," the Code of Ethics states, in pertinent part:

> Full, fair, accurate, timely and understandable disclosures in the Company's periodic reports filed with the SEC and in our other public communications is required by SEC rules and is essential to the Company's continued success. Each Senior Executive and Financial Officer is expected to exercise the highest standard of care in preparing such materials. The Company has established the following guidelines in order to ensure the quality of its periodic reports:
>
> - all Company accounting records, as well as reports produced from those records, must be kept and presented in accordance with the laws of each applicable jurisdiction;
>
> - all records must fairly and accurately reflect the transactions or occurrences to which they relate;
>
> - all records must fairly and accurately reflect in reasonable detail the Company's assets, liabilities, revenues and expenses;
>
> - the Company's accounting records must not contain any false or intentionally misleading entries;
>
> - no transaction may be intentionally misclassified as to accounts, departments or accounting periods or in any other manner;
>
> - all transactions must be supported by accurate documentation in reasonable detail and recorded in the proper account and in the proper accounting period;

12

- no information may be concealed from the internal auditors or the independent auditors; and

- compliance with Generally Accepted Accounting Principles and the Company's system of internal accounting controls is required at all times.

51.     In a subsection titled "Compliance with Laws and Ethics Code," the Code of Ethics states, in pertinent part:

> Senior Executive and Financial Officers must always act in good faith, responsibly, with due care and diligence and without knowingly misrepresenting material facts or allowing independent judgment to be subordinated to the best interests of the Company. Each Senior Executive and Financial Officer is expected to comply with both the letter and spirit of all applicable laws, governmental rules and regulations and this Code, and is expected to promptly report any suspected violations of applicable laws, governmental rules and regulations or this Code to the Compliance Officer.

## HAYWARD'S AUDIT COMMITTEE CHARTER

52.     Hayward's Audit Committee Charter states that the purpose of the Audit Committee is to: "[O]versee the accounting and financial reporting processes of the Company and the audits of the Company's financial statements."

53.     The Audit Committee Charter further states that the Audit Committee is responsible for:

> Assisting the Board in its oversight of (i) the integrity of the consolidated financial statements of the Company, (ii) the Company's compliance with legal and regulatory requirements, (iii) the independent auditor's qualifications and independence, (iv) the performance of the Company's internal audit function and independent auditors; (v) the Company's internal control over financial reporting; (vi) technology security; and (vii) related party transactions involving the Company and members of the Board and executive officers of the Company.

54.     In a subsection titled "Review and Discussion of Annual Financial Statements," the Audit Committee Charter states:

> The Audit Committee shall meet to review and discuss with management and the independent auditor the annual audited financial statements, including reviewing,

to the extent applicable, specific disclosures made under "Management's Discussion and Analysis of Financial Condition and Results of Operations," and recommend to the Board whether the audited financial statements should be included in any Annual Report on Form 10-K required to be filed by the Company with the SEC.

55.     With respect to the Company's quarterly financial statements, the Audit Committee

Charter states:

The Audit Committee shall meet to review and discuss with management and the independent auditor the quarterly financial statements, including reviewing, to the extent applicable, -7- specific disclosures made under "Management's Discussion and Analysis of Financial Condition and Results of Operations," and the results of the independent auditor's review of the quarterly financial statements, prior to the filing of any Quarterly Report on Form 10-Q required to be filed by the Company with the SEC.

56.     With respect to the Company's earnings press releases and financial forecasts, the

Audit Committee Charter states that the Audit Committee shall: "[P]eriodically discuss with

management the Company's earnings press releases, financial information and earnings guidance

provided to analysts and rating agencies as well as any policies in respect thereof."

57.     In a section titled "**Controls and Procedures**," the Audit Committee Charter states:

1. Disclosure. The Audit Committee shall review disclosures about any significant deficiencies or material weaknesses in the design or operation of internal controls and any fraud involving management or employees playing a significant role in the Company's internal controls, made to the Audit Committee by the Company's chief executive officer and chief financial officer, including, to the extent applicable, any disclosures made during their certification process for Annual Reports on Form 10-K and Quarterly Reports on Form 10-Q.

2. Internal Controls and Internal Controls Reports. The Audit Committee shall review and discuss with management, internal audit staff (or other personnel responsible for the internal audit function) and the independent auditor the adequacy of the Company's internal controls, any special steps or remedial measures adopted in light of material control weaknesses or significant deficiencies and, to the extent applicable, the Company's internal controls report and the independent auditor's internal controls report prior to the filing of any Annual Report on Form 10-K or any Quarterly Report on Form 10-Q required to be filed by the Company with the SEC.

58. In a subsection titled "Risk Management," the Audit Committee Charter states that the Audit Committee shall: "[D]iscuss with management the Company's major financial risk exposures and the steps management has taken to monitor and control such exposures, including the Company's risk assessment and risk management policies."

## SUBSTANTIVE ALLEGATIONS

*Background*

59. Hayward is an international designer, manufacturer, and marketer of pool equipment and associated automation systems based in New Jersey and incorporated in Delaware.

60. Hayward generates most of its revenue from specialty distributors, who in turn sell to pool builders, retailers, and servicers. The Company purports to have "long-standing relationships with these trade customers" and "contractual agreements to support [its] continued net sales of [its] products through this channel." Hayward recognizes revenue at the moment it ships products to its customers, who are predominantly distributors, rather than at the time they are sold to actual consumers.

61. In March 2021, Hayward completed an initial public offering ("IPO"), issuing over 40 million shares of Company stock for $17 per share. Following the IPO, the Company purported to experience robust demand and rapid growth. For instance, on October 27, 2021, Hayward announced third quarter 2021 net sales of $350.6 million, an increase of 56% year-over-year. Hayward further raised 2021 expected net sales growth to a range of 59% to 62%, up from a range of 54% to 58% and reaffirmed 2021 expected adjusted earnings of $405 million to $425 million.

62. On this news, the price of Hayward stock rose above $20 per share, hitting a high price of $27 per share by mid-November 2021.

63. During the Relevant Period, the Individual Defendants misleadingly touted strong

15

demand trends while engaging in a channel-stuffing scheme to artificially inflate the Company's revenues and create an illusion of high demand. Pursuant to the scheme, the Company sent its distribution channel partners more inventory than they were able to sell to its consumers, creating a short-term boost in sales at the expense of future revenues.

***Materially False and Misleading Statements During the Relevant Period***

64.    The Relevant Period begins on October 27, 2021, when the Company announced financial results for the third quarter of fiscal year 2021 ("3Q21") and touted a 56% increase in net sales, purportedly driven by "higher volumes, mainly in residential pool equipment sales as we continued to see elevated demand from aftermarket upgrades and new construction." The Individual Defendants claimed that the Company "continue[d] to benefit from a robust demand environment for outdoor living products, production capabilities, new products . . . and pricing." Further, the Company's allegedly strong financial performance purportedly gave the Individual Defendants "increased confidence in our ability to execute growth levers" and allowed the Company to raise its full-year 2021 net sales guidance to "59% to 62% year-over-year compared to its previously provided outlook of 54% to 58%."

65.    Defendant Holleran reiterated these claims during the Company's 3Q21 analyst call, held on the same day. For instance, Defendant Holleran claimed that Hayward had "another very strong quarter of growth as [it] delivered net sales of $351 million, [representing] an increase of 56% year-over-year." Defendant Holleran further claimed that, due to heightened demand for pool products and pool construction and repair, the Company is "very well positioned to continue to generate growth for all stakeholders in 2021 and the years ahead."

66.    Also during the 3Q21 earnings call, with respect to the Company's channel inventories, Defendant Hayward stated:

*Inventories are in a healthier position than they were a quarter or 2 ago.* If you look at it from a days-on-hand standpoint, it's still a—it's an improving position, but certainly not too much by any means.

Admittedly, the mix of that inventory may not be as ideal as any of us would like it. There's still some products that are in shorter supply. So we're working feverishly to address that. But in total, I think we're taking some extra shelf space right now. So we look at it really through 2 lenses: in absolute terms, what's – what are the inventory levels looking like, but also then are accounting for some additional shelf space through our share gains.

So yes, *I mean we keep close tabs on it. We have good insight from our large distributor partners. And these are conversations that we have with them in understanding what they need more of and trying to improve that mix so that we can push more product out to its ultimate use in the backyard.[1]*

67.    On January 5, 2022, the Company announced certain financial results for the fourth quarter and fully year 2021, including an increase in net sales resulting from "continued . . . demand from aftermarket upgrades and new construction." According to the Individual Defendants, "*[n]et sales growth continue[d] to benefit from the demand environment for outdoor living products, [Hayward's] production capabilities, introduction of new products, . . . and price increases in response to higher inflation.*" The Individual Defendants further attributed the increased net sales to "higher volumes, mainly in residential pool equipment sales as [it] *continued to see demand* from aftermarket upgrades and new construction, and *channel inventory replenishments*."

68.    On March 2, 2022, the Company released its financial results for the fourth quarter and fiscal year 2021. In the accompanying press release, Defendant Holleran stated that Hayward was "entering 2022 with significant momentum" and that he was "encouraged by underlying industry demand levels."

---

[1] Unless indicated otherwise, all emphasis in this Complaint is added.

69.     During an earnings call that same day, Defendant Holleran stated that Hayward's "successes this year with servicing [its] end markets with reliable product[s] and innovative new technologies in a demanding operating environment *is a direct result of [its] manufacturing capabilities and investments in strengthening [Hayward's] competitive positioning.*" Defendant Holleran attributed the increase in fourth quarter net sales to "continued demand in residential pool equipment sales, in particular aftermarket upgrades, service and new construction," and stated that Hayward's "*[n]et sales growth continue[d] to benefit from a robust demand environment* for outdoor living products, increased capacity and capabilities leading to higher output, and strategic pricing actions." Defendant Holleran further attributed Hayward's 60% net sales growth for the full year to the Company's success in executing "on a number of growth levers such as SmartPad conversion," increasing "market adoption of new products," and expanding its "customer base, all of which were supported by Hayward's investment in capacity and distribution, resulting in higher output levels and driven by strong secular trends in outdoor living." With respect to 2022 forecasts, Defendant Holleran stated that the Company expects to "grow net sales in the range of 9% to 12% compared to 2021," based on "strong carryover demand, conversion of current order file, pricing benefits and ongoing product adoption."

70.     During the call, in response to a question about whether Hayward had excess inventory or if its product levels reflected high underlying customer demand, Defendant Holleran stated:

> I think it's more of the latter, Mike. *I think it's a very credible order file. There's been plenty of price increases that we've had to announce into the industry. We ran kind of a modest early buy last year. If the channel was feeling as if they had too much or were unhappy with their inventory turns, I think there was opportunity for them to slow the bookings or even cancel and we've seen negligible cancellations through those time periods. So we feel very good about the credibility of the order file.*

As for inventory levels, they are getting back to more normal levels, good turns on it. ***We don't think it's elevated***. But what I will acknowledge is, I think that there's some shortages of some particular SKUs that we'd like to be able to solve, and we're working hard here the beginning part of 2022 to try and rectify that, whether it's some salt or other products. We know that it's not a perfectly balanced inventory from a SKU standpoint, but we're working hard to solve that.

71.    With respect to Hayward's forecasts, Defendant Holleran stated: "We feel very positive about the start of the year. To your point, the sort of very strong order file that we have on the business right now as we step into the primary season period of Q2, we'll get a better read on how the balance of the year is building out, but it's fair to say that the guidance we've given right now does have an element of conservatism."

72.    On March 9, 2022, the Company filed its Annual Report on Form 10-K, signed by Defendants Holleran, Afraz, Bertrand, Brenneman, Brown, Dayhoff, Felice, McFadden, Peters, Silber, Soucy, Walker, and Walsh ("the 2021 10-K"). The 2021 10-K again touted Hayward's net sales growth and attributed the growth to "market demand, expansion of [Hayward's] trade customers, and product offering[s]."

73.    On April 28, 2022, the Company issued a press release announcing financial results for the first quarter of fiscal year 2022 (the "1Q22 Release") a 23% year-over-year increase in net sales attributable to "higher volumes driven by production capabilities, adoption of new products and strategic pricing actions to offset the inflationary environment." Defendant Holleran stated: "We entered 2022 with significant momentum ***given the robust end market demand,*** strengthened product offering, and our enhanced operational capabilities. I am pleased to report another quarter of strong financial performance as our team worked hard to continue to supply our customers with leading products and solutions." Defendant Holleran continued: "The backdrop for the pool industry remains attractive and continues to be supported by sustainable secular demand trends

across new construction and the aftermarket which represents approximately 80% of our business."

He added: "***Our momentum is being driven by our innovation and our ability to meet market demand and we are confident that we will be able to perform in the near-term*** while generating long-term value for all our stockholders."

74.     During Hayward's earnings call held on the same day (the "1Q22 earnings call") , in response to a question about consumer spending or "any cancellations in the order file," Defendant Holleran stated:

> We really haven't seen any kind of cancellations. We're in pretty close contact with both channel partners and our dealers, and ***the work on the books and new lead generation both remain strong despite plenty of price increases. And obviously, the channel inventory position has gotten better. We're in a much better position going into the start of the season in 2022.***
>
> So no, we're still seeing robust demand and the order file on the books is still very strong and seems to be pressure tested, and product is going to be installed in the backyard.

75.     During the same call, with respect to channel inventory, Defendant Holleran stated that the Company keeps "close tabs on it" and that management "feel[s] comfortable with it."

Defendant Holleran continued:

The industry has also grown, so there ***needs to be additional inventory in there to support the overall industry growth, which has been 30-plus percent over the last few years. And then from – specifically to Hayward, some of our share gains, that would require some incremental inventory positions for the Hayward product in the channel***.

So all that said, we feel ***comfortable with our inventory position*** from a days on hand standpoint here at the start of the season. Our guidance assumes that there will be greater sell out than sell into the channel during the 2022 season. And these are the things that we're going to keep close tabs on as we work through the year and start – continue with our guidance updates and look out into 2023, Mike.

76.     On April 29, 2022, the Company filed its quarterly report with the SEC for the period ended April 2, 2022. The Form 10-Q contained the financial information regarding the Company's first quarter financial results that was contained in the 1Q22 Release and 1Q22

Earnings Call.

77.     On May 4, 2022, the Company filed a prospectus supplement on Form 424B7 with the SEC which, together with other documents incorporated by reference, formed the registration statement for the SPO (the "Registration Statement"). The Registration Statement was signed by Defendants Holleran, Felice, Afraz, Bertrand, Brenneman, Brown, Dayhoff, McFadden, Peters, Silber, Soucy, Walker, and Walsh. The Registration Statement, offering 24 million shares of Company stock to the investing public at $14.50 per share, continued to attribute the Company's net sales growth to increased demand in Hayward's Distributors sales channel.

78.     The foregoing statements were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) Hayward's net sales growth was not due to the Company's "agile manufacturing capabilities," "competitive positioning," or "innovative technology;" and (ii) demand for Hayward's products was not "elevated" at all, but rather Hayward and its management had engaged in a channel-stuffing scheme to artificially inflate the Company's short-term sales and earnings. In other words, Hayward inundated its channel partners with excess inventory, not only impairing the Company's ability to sell to its channel partners in the future, but also causing Hayward's channel partners to undertake massive destocking initiatives to reduce inventory levels. As a result, the Individual Defendants lacked a reasonable basis for their optimistic statements about the Company's business, operations, and prospects, including the Company's 2022 financial projections.

**The Truth Emerges**

79.     On July 28, 2022, the Company announced financial results for the second quarter of 2022. Despite reporting a 10% increase in net sales, the Company revealed that it was adversely

21

impacted by "lower volumes," resulting primarily from "20% lower volume sales in Europe due to geopolitical factors, poor weather in seasonal markets in North America, and ***initial channel inventory reductions.***"

80.     Defendant Holleran revealed that Hayward "expect[ed] [its] channel partners will reduce their Hayward inventory on hand by approximately 4 to 6 weeks in the second half of 2022," and that, as a result, the Company is "reducing [its] 2022 guidance to reflect this inventory reduction," revising the Company's outlook for 2022 to "a decline of 2% to 6% year-over-year." Importantly, during an earnings call held the same day, Defendant Holleran acknowledged that the inventory bottleneck was due to inventory decisions made "at the end of 2021" (*i.e.*, the start of the Relevant Period).

81.     On this news, the price of Hayward's stock declined 18.23%, closing at $11.21 per share on July 28, 2022. This represented a 23% decline from the SPO offering price.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

82.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

83.     Hayward is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

84.     Plaintiff is an owner of Hayward common stock and has been a continuous shareholder of Company stock at all relevant times.

85.     Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

86.     A pre-suit demand on the Board of Hayward is futile and, therefore, excused. At the time this action was commenced, the Board consisted of Defendants Holleran, Felice, Bertrand, Brown, Dayhoff, Silber, Soucy, Walker, and Ward (the "Director Defendants"). Plaintiff is only required to show that five of the nine Director Defendants cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all nine Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action because they face a substantial likelihood of liability for misconduct alleged herein. Therefore, demand on the Board to institute this action is not necessary because such a demand would have been a futile and useless act.

87.     The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

88.     The Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

89.     Moreover, the Director Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

90.     Defendants Dayhoff, Soucy, Walker, and Felice serve on the Company's Audit Committee either currently or during the Relevant Period (the "Audit Defendants") and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the

Board in fulfilling its oversight responsibilities related to, *inter alia*, financial accounting and reporting, the underlying internal controls and procedures over financial reporting, and the audits of the financial statements. At all relevant times, however, the Audit Defendants breached their fiduciary duty to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the Company's business and the adequacy of its internal controls as alleged above. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihoods.

91. The Director Defendants derive substantial revenue from the Company, control the Company, and are indebted to each other. These conflicts of interest have precluded the directors from adequately monitoring the Company's operations and internal controls and calling into question the other Individual Defendants' conduct. Specifically, none of the Director Defendants have taken remedial action to redress the conduct alleged herein.

92. The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

93. The acts complained of herein constitute violations of fiduciary duties owed by Hayward's officers and directors, and these acts are incapable of ratification.

94.     The Individual Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds *i.e.*, monies belonging to the stockholders of Hayward. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Individual Defendants were to sue themselves or certain officers of Hayward, there would be no directors' and officers' insurance protection. Accordingly, the Individual Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Individual Defendants is futile and, therefore, excused.

95.     If there is no directors' and officers' liability insurance, then the directors will not cause Hayward to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

96.     Thus, for all of the reasons set forth above, all of the directors are unable to consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

### COUNT I
### Against The Individual Defendants For Violations of § 10(b)
### of the Exchange Act and Rule 10b-5

97.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

98.     The Individual Defendants violated § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

99.     The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

100.    The Individual Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated.

101.    The Individual Defendants acted with scienter because they (i) knew that the public documents and statements issued or disseminated in the name of Hayward were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.

102.    The Individual Defendants, by virtue of their receipt of information reflecting the true facts of Hayward, their control over, and/or receipt and/or modification of Hayward's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Hayward, participated in the

26

fraudulent scheme alleged herein.

103.   As a result of the foregoing, the market price of Hayward common stock was artificially inflated. In ignorance of the falsity of the statements, stockholders relied on the statements described above and/or the integrity of the market price of Hayward common stock in purchasing Hayward common stock at prices that were artificially inflated as a result of these false and misleading statements and were damaged thereby.

104.   Likewise, as a result of the wrongful conduct alleged herein, the Company has also suffered significant damages, including the costs and expenses incurred in defending itself in the Securities Actions and reputational harm. The Individual Defendants, through their violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, have exposed the Company to millions of dollars in potential class-wide damages in the Securities Actions.

### COUNT II
**Against The Individual Defendants
For Breach Of Fiduciary Duty**

105.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

106.   The Individual Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, candor, loyalty, and due care.

107.   The Individual Defendants willfully ignored the obvious deficiencies in the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

108.   The Individual Defendants breached their fiduciary duties of good faith, candor, loyalty, and due care by making and/or authorizing false and misleading statements concerning

the Company's business, finances, and the adequacy of its internal controls.

109.    During the Relevant Period, the Individual Defendants intentionally or recklessly made or permitted materially false and misleading statements and omitted material facts concerning the Company's financial results, business, and prospects.

110.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

111.    As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

112.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Actions, exposing the Company to millions of dollars in potential class-wide damages in the Securities Actions, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

113.    Plaintiff, on behalf of Hayward, has no adequate remedy at law.

### COUNT III
**Against The Individual Defendants For Aiding and
Abetting Breach of Fiduciary Duty**

114.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

115.   By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breach of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

116.   Plaintiff on behalf of Hayward has no adequate remedy at law.

### COUNT IV
**Against The Individual Defendants
For Unjust Enrichment**

117.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

118.   By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Hayward.

119.   The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Hayward that was tied to the performance or artificially inflated valuation of Hayward or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

120.   Defendant Smith was further unjustly enriched with respect to insider sales of

Company stock.

121.    Plaintiff, as a stockholder and a representative of Hayward, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

122.    Plaintiff on behalf of Hayward has no adequate remedy at law.

**COUNT V**
**Against The Individual Defendants**
**For Waste Of Corporate Assets**

123.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

124.    The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of the Company's internal controls, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by allowing the Company to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing at all relevant times.

125.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (a) paying and collecting excessive compensation and bonuses; and (b) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Actions.

126.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

127.    Plaintiff on behalf Hayward has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Declaring that Plaintiff may maintain this derivative action on behalf of Hayward and that Plaintiff is a proper and adequate representative of the Company;

B.      Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and unjust enrichment;

C.      Directing Hayward to take all necessary actions to reform and improve its corporate governance and internal procedures to protect Hayward and its stockholders from a repeat of the damaging events described herein, including, but not limited to:

- strengthening the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

- strengthening the Company's internal reporting and financial disclosure controls;

- developing and implementing procedures for greater shareholder input into the policies and guidelines of the Board; and

- strengthening the Company's internal operational control functions;

C.      Awarding punitive damages;

D.      Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

31

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: November 27, 2023                                    **RIGRODSKY LAW, P.A.**

                                                           By:   */s/ Gina M. Serra*
                                                           _____
                                                                 Gina M. Serra
                                                                 825 East Gate Boulevard, Suite 300
                                                                 Garden City, NY 11530
                                                                 Telephone: (516) 683-3516
                                                                 Email: gms@rl-legal.com

***Of Counsel:***                                                *Counsel for Plaintiff Steven Heicklen*

**RIGRODSKY LAW, P.A.**
Seth D. Rigrodsky
Timothy J. MacFall
Samir Aougab
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: sdr@rl-legal.com
Email: tjm@rl-legal.com
Email: sa@rl-legal.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Erica L. Stone
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: estone@rosenlegal.com